# UNITED STATES DISTRICT COURT

for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

one white Apple iPhone, Model: A1634; IMEI: 353299075033879; FCC ID: BCG-E2944A

Case No.

**FILED**
MAR 2 2 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

**19MJ1191**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference

located in the ____Southern____ District of ____California____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841,843(b),844,846, 952,960,963 & 18 USC 922,924 1956, 1957 & 31 USC 5332 | distribution, importation, possession of controlled substances & conspiracy to import/distribute; use of communication facility; firearms violations; money laundering violations, bulk cash smuggling violations. |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ETHAN CRAMER, HSI SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-22-19

*Judge's signature*

City and state: San Diego, CA
HON. NITA L. STORMES , U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

## TARGET DEVICE #1

The following property is to be searched:

ONE WHITE APPLE IPHONE, MODEL: A1634; IMEI: 353299075033879; FCC ID: BCG-E2944A ("TARGET DEVICE #1)

**TARGET DEVICE #1** is currently in possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154.

## ATTACHMENT B-1

## DESCRIPTION OF EVIDENCE TO BE SEIZED

Authorization is sought to search for and seize evidence of crimes, specifically violations of Title 21, United States Code Sections 841 (distribution of controlled substances), 843(b) (use of communication facility in felony), 844 (possession of controlled substances), 846 (conspiracy to distribute controlled substances); 952, 960 and 963 (importation of controlled substances and conspiracy to do the same), Title 18, United States Code Sections 922 and 924 (firearms violations), Title 18, United States Code Sections 1956 and 1957 (money laundering offenses), and Title 31 United States Code Sections 5332 (bulk cash smuggling).

The items to be seized are communications, records data, emails, text messages, photographs, electronic messages, audio files and video files:

i. tending to indicate efforts to distribute controlled substances within the United States, to possess controlled substances within the United States or to smuggle/import controlled substances into the United States from Mexico;

ii. tending to indicate efforts to collect, store, and or transport illicit proceeds in the United States, to transport/smuggle the illicit proceeds from the United States into Mexico.

iii. tending to identify co-conspirators, criminal associates, or others involved in the smuggling/importation of controlled substances into the United States or in the distribution of controlled substances within the United States;

iv. tending to identify co-conspirators, criminal associates, or others involved in the laundering, transportation, and or smuggling of illicit proceeds from the United States to Mexico.

v. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States and the movement and maintenance of controlled substances or illicitly held firearms within the United States such as stash houses, load houses or delivery points;

vi. tending to identify travel to or presence at locations involved in collecting, storing, or disseminating illicit proceeds intended to be smuggled into

Mexico in the form of bulk currency or through laundering schemes meant to evade reporting requirements.

      vii.    tending to identify the user of, or persons with control over or access to the subject phone;

      viii.    tending to indicate efforts to acquire, possess, transport, smuggle, manufacture or sell firearms;

      ix.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses and phone numbers that may contain electronic evidence tending to indicate efforts to distribute controlled substances within the United States, efforts to deliver controlled substances from Mexico to the United States or efforts to acquire, possess, smuggle, sell or transport firearms;

      x.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records or data above;

      xi.    tending to provide telephone numbers, direct connect numbers or other identities assigned to the device, including usernames, passwords and electronic mail addresses;

      xii.    tending to provide call and direct connect history information, including Internet Protocol addresses accessed by the device or accessing the device; and

      xiii.    tending to provide Web-browsing history and any stored web pages and that may include evidence related to the possession, distribution or importation of controlled substances or related to the acquisition, possession, smuggling, sale or transport of firearms.

The protocols described in paragraphs 26 through 28 of the Affidavit will be used for the identification and extraction of data subject to seizure pursuant to this warrant.

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Ethan Cramer, having been duly sworn, state as follows:

## EXPERIENCE AND TRAINING

1. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent ("SA") with ICE, Homeland Security Investigations ("HSI"), since July 2010. I am presently assigned as the acting Supervisor Special Agent (SSA) for a group in San Diego, CA, that focuses on the smuggling of controlled substances into the United States along the southwest border. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been and continue to be involved with investigations for Title 21 offenses and work closely with other agencies, including the U.S. Drug Enforcement Administration.

2. As a federal law enforcement officer for over eight years, I have received formal training, as well as extensive on-the-job training, relative to the investigation of narcotics trafficking, money laundering, bulk cash smuggling, black market peso exchange, transportation, layering, structuring and other techniques used to launder illicit proceeds from the sales of narcotics. I have participated in investigations which involved the use of electronic surveillance techniques and have been involved in multiple federal wiretap investigations. I have monitored or overheard numerous calls or meetings between informants or undercover agents, drug traffickers and money launderers. I have investigated illicit narcotics, controlled substances, money laundering, bulk cash smuggling, and other crimes that have resulted in arrests, indictments, and convictions. While

1

participating in these and other criminal investigations, I have executed search warrants on businesses, residences, vehicles and storage facilities. As a result of these investigations, I have become familiar with methods and techniques used by narcotics traffickers to import narcotics into the U.S. and distribute those narcotics within the U.S. and the methods and techniques used by money launderers and narcotics traffickers to derive, launder, and conceal illicit proceeds, and to use these proceeds to promote and facilitate unlawful activity. I have also participated in undercover operations which involved the collection, transportation, exportation and laundering of illicit proceeds derived from the sale of narcotics and other items.

3. The following is based on my own investigation and oral and written reports and accounts by other law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Rather, I have included only facts relevant to establishing the requisite probable cause for the warrant sought.

4. Much of the information set forth in this affidavit has been provided to me by federal, state, and local task force officers or other law enforcement officers. Unless otherwise noted, whenever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have have spoken or whose report I have read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations, but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

5. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo, such as narcotics, narcotic proceeds or weapons while the conveyance is in transit.

c. Smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo, such as narcotics, narcotic proceeds or weapons will arrive at predetermined locations.

d. Smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo, such as narcotics, narcotic proceeds or weapons.

e. Smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their illegal cargo,

3

such as narcotics, narcotic proceeds or weapons.

g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

**PURPOSE OF AFFIDAVIT/ITEMS TO BE SEIZED**

6. I make this affidavit in support of applications for search warrants for the below-listed electronic devices (**Target Device #1** and **Target Device #2** collectively referenced as the "**Target Devices**"), currently in the possession of HSI-San Diego Deputy Special Agent in Charge office[1], that are described more fully in **Attachments A-1** and **A-2** for evidence described more fully in Attachments **B-1** and **B-2,** hereto:

> (1) one white Apple iPhone, Model: A1634; IMEI: 353299075033879; FCC ID: BCG-E2944A (**Target Device #1**);
>
> (2) one red Apple iPhone, Model: A1660; IMEI: 355829083324262; FCC ID: BCG-E3085A (**Target Device #2**);

These warrants are to seize evidence of crimes, specifically violations of Title 21, United States Code Sections 841, 843(b), 844, 846; 952, 960 and 963 (distribution of narcotics, importation of narcotics and conspiracy to distribute and to import narcotics); Title 31 United States Code Section 5332 (bulk cash smuggling); Title 18 United States Code Sections 1956 and 1957 (money laundering offenses); and Title 18, United States Code Sections 922 and 924 (firearms offenses).

---

[1] As explained further below, on January 22, 2018, Target Device #1 and Target Device #2 were seized upon NUNEZ' arrest. The devices have been in HSI's custody at HSI's Deputy Special Agent in Charge San Ysidro Office since the date of arrest.

4

8.  Based upon my experience and training, and the facts and opinions set forth in this Affidavit, I believe the following items pertaining to the above-described violations will be found in the cellular telephones to be searched:

    a.  Communications, records, data, emails, text messages, PIN messages, photographs, electronic messages, audio files and video files:

        i.  tending to: indicate efforts to distribute controlled substances; to transport, ship or otherwise move or conceal, or attempt to move or conceal, illicit proceeds within the United States; to possess controlled substances and or illicit proceeds within the United States; to smuggle or otherwise import controlled substances into the United States from Mexico; to transport or otherwise move, or attempt to move, illicit proceeds into Mexico; or to transport or otherwise move, or attempt to move, or otherwise illicitly possess firearms;

        ii.  tending to identify co-conspirators, criminal associates, or others involved in: the smuggling/importation of controlled substances into the United States; the distribution of controlled substances within the United States; or the transportation or laundering of illicit proceeds from the sales of controlled substances or illicitly obtained firearms;

        iii.  tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States or the movement and maintenance

5

of controlled substances, illicitly held firearms, and illicit proceeds within the United States such as at stash houses, load houses or delivery points;

iv. tending to identify the user of, or persons with control over or access to the subject phone;

v. tending to indicate efforts to acquire, possess, transport, smuggle, manufacture or sell firearms;

vi. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses and phone numbers that may contain electronic evidence tending to indicate efforts to distribute controlled substances within the United States, efforts to deliver controlled substances from Mexico to the United States, efforts to acquire, possess, smuggle, sell or transport firearms, transport illicit proceeds, or launder illicit proceeds;

vii. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records or data above.

viii. tending to provide telephone numbers, direct connect numbers or other identities assigned to the device, including usernames, passwords and electronic mail addresses;

ix. tending to provide call and direct connect history information, including Internet Protocol addresses accessed by the device or accessing the device;

      x.     tending to provide Web-browsing history and any stored web pages and that may include evidence related to the possession, distribution or importation of controlled substances; the acquisition, possession, smuggling, sale or transport of firearms; and the transportation or laundering of illicit proceeds.

     9.     As further detailed below, I submit that there is probable cause to believe that the items to be searched, as identified in Attachments **B-1** & **B-2** have been used in the commission of a crime and constitute evidence, fruits and instrumentalities of violations of violations of Title 21, United States Code Sections 841, 843(b), 846, 952, 960 and 963 and Title 18, United States Code, Sections 922, 924, 1956, and 1957 and that the foregoing will be found on the **Target Devices**, as further described in **Attachments A-1 & A-2.**

### FACTS SUPPORTING PROBABLE CAUSE

     10.    On January 22, 2018, the Orange County Sheriff's Department conducted a traffic stop on a white 2012 Volkswagen Passat bearing California license plates 7HHU871. Deputy Rich Franco (hereinafter "Deputy-1") identified Ernesto NUNEZ to be the driver and sole occupant of the vehicle. During a search of the Passat, Sheriff Deputies discovered and seized a .45 caliber handgun and $31,360. The handgun had been concealed within the passenger side windshield cowling. Following being read his *Miranda* warnings, NUNEZ waived his *Miranda* rights and provided a voluntary statement during which he admitted to knowing the gun and money were in the vehicle and indicating that he intended to

take those items south into Mexico with him. NUNEZ was charged with violating Title 18 U.S.C. § 922(g) and 31 U.S.C. 5332 and is currently awaiting trial scheduled for May 7, 2019 before the Hon. Marilyn L. Huff. On November 13, 2018, NUNEZ submitted a motion to suppress evidence; that motion, which concerned the propriety of the stop and seizure of the firearm and bulk U.S. currency, was denied following an evidentiary hearing conducted by Judge Huff on January 22 and January 23, 2019. The following information pertains to the traffic stop that led to NUNEZ' arrest:

11.     On January 22, 2018, beginning at approximately 9:44 a.m., Deputy-1 was traveling southbound on Interstate 5 just north of Las Pulgas Road when he observed a white 2012 Volkswagen Passat bearing California license plates 7HHU871 (hereinafter "Passat"). After pacing the vehicle, Deputy-1 determined that the Passat was traveling above the posted speed limit in violation on CVC 22349(a). Deputy-1 initiated his emergency lights, resulting in the Passat pulling onto the shoulder just north of the Las Pulgas Road.

12.     As Deputy-1 approached the vehicle, the driver, who was later identified to be Ernesto NUNEZ, extended his hand to shake the Deputy's hand. As Deputy-1 grasped the driver's hand, he noticed his hand to be sweaty and shaking slightly. Before reaching the vehicle, Deputy-1 noticed a strong odor of cologne. He also noticed a series of cologne and other bottles on the front seat of the vehicle, at least some of which appeared to be open.

13.     NUNEZ stated the Passat belonged to him and that he had purchased the vehicle approximately one month prior for $4,000 at an auction in San Diego. NUNEZ stated he was traveling from San Fernando, California to his house in San

8

Diego after visiting his daughter. Deputy-1 pointed out that NUNEZ' Driver's License listed a Van Nuys address at which time, NUNEZ stated he lived in both Van Nuys and San Diego. Deputy-1 asked NUNEZ for his San Diego address. NUNEZ could not, however, provide the address and claimed he did not know it.

14. Deputy-1 asked NUNEZ to step out of the vehicle. NUNEZ complied. Deputy-1 again asked NUNEZ about his San Diego address. NUNEZ then stated that he did not live in San Diego but lived in Rosarito, Mexico. NUNEZ stated he had crossed into the United States on January 19, 2018, and was on his way home to Rosarito, Mexico.

15. Deputy-1 asked NUNEZ if he was the only one who had driven the vehicle that day and NUNEZ confirmed he was. Deputy-1 asked NUNEZ if he had anything illegal in the vehicle and NUNEZ replied "No". Deputy-1 provided NUNEZ a Consent to Search Form requesting permission to search the Passat. While NUNEZ stated he did not want to sign the form, he was recorded stating "You know, if you want to, go ahead". At this time, Deputy Gino Rodriguez (hereinafter "Deputy-2"), who had arrived on scene and was assisting Deputy-1, requested NUNEZ to remove the contents of his pockets, which Deputy-1 had observed were bulging. NUNEZ removed multiple bundles of United States currency from his front pockets. NUNEZ later acknowledged that these bundles totaled approximately $4,000.

16. Before searching the vehicle, Deputy-1 deployed his narcotic detection dog, Bolt, from his patrol car. As Deputy-1 walked Bolt around the Passat, he noticed Bolt alert on the front right wheel well, passenger side rocker panel, and the left rear wheel well. During a search of the vehicle, Deputy-2

located a red and black box in the front compartment area of the vehicle. Inside the box, the deputies discovered bundles of United States currency and one bundle of Mexican Pesos. As Deputy-2 was searching the engine compartment, he opened the passenger side windshield cowling and discovered a handgun wrapped in a multicolored handkerchief. At this time, NUNEZ was handcuffed and placed in the backseat of Deputy-1's patrol vehicle.

17. HSI Supervisory Special Agent (SSA) Kevin Murphy and I responded to the San Clemente Border Patrol Station, where NUNEZ and the vehicle had been transported. SSA Murphy and I contacted NUNEZ and informed him he was under arrest for the transportation of bulk currency and being a felon in possession of a firearm. NUNEZ was read his rights, per Miranda, in the English language, from a pre-printed form by me and witnessed by SSA Murphy. NUNEZ waived his Miranda rights both verbally and in writing and agreed to answer questions.

18. NUNEZ stated that he was on his way to Rosarito, Mexico. NUNEZ stated he did not plan on stopping before crossing into Mexico. When asked about the gun found in the vehicle, NUNEZ stated the gun belonged to him and that, in 2007, he had also been arrested for being in possession of a gun. NUNEZ stated he purchased the gun from a friend the day prior for $350. NUNEZ stated his friend concealed the gun in the car for him. NUNEZ stated he was present when his friend placed the gun in the natural void accessed through the engine compartment.

19. NUNEZ stated that, when he was stopped by the Deputy, he believed he had approximately $4,000 in his pockets and an additional $20,000 in the vehicle. NUNEZ stated the rest of the money was in the console and underneath the steering wheel. NUNEZ stated he hid the money because he was going to cross

the border. NUNEZ then modified his prior statement and said he was going to put some money in a bank account prior to crossing but indicated he intended to cross at least $20,000 into Mexico.

20.   NUNEZ stated that he purchased the Passat in Otay Mesa, CA, for $2,800 from an unidentified individual. NUNEZ stated the guy from whom he had purchased the vehicle put in the non-factory compartment underneath the steering wheel. NUNEZ then stated he had the guy put the compartment underneath the steering wheel the day prior to his arrest.

22.   At the time of NUNEZ' arrest, **Target Device#1 & Target Device#2** were in his possession.

23.   On January 22, 2018, the combined United States Currency and Mexican Pesos seized from NUNEZ' vehicles was determined to be $31,360.

24.   I know from my training and experience that individuals working for organizations involved in conspiracies to distribute controlled substances or to launder money use public, cellular, and mobile telephones on a regular basis in order to facilitate narcotic transactions. It is common for individuals involved in narcotic or money laundering activity to have and use multiple cell phones at any one given time. This is because they believe law enforcement may have wiretaps in place and may be collecting information pertaining to the organization and the distribution of controlled substances. By having and using multiple cell phones, individuals involved in narcotics activity believe they are shielding themselves from law enforcement detection.

25.   NUNEZ is currently charged by Information in this district in Case No. 18cr00772 with one Count of possession of a firearm by a felon in violation of

18 U.S.C. § 922(g)(1) and one count of bulk cash smuggling into or out of the United States in violation of 31 U.S.C. § 5332.

## **METHODOLOGY**

26. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the

process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

29. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that NUNEZ used each of the **Target Telephones** to facilitate the transportation of bulk currency into or out of the United States and to illicitly acquire and maintain firearms. There is probable cause to believe that the items to be searched, as identified in Attachments **B-1** & **B-2** have been used in the commission of a crime and constitute evidence, fruits and instrumentalities of violations of violations of Title 21, United States Code Sections 841, 843(b), 846, 952, 960 and 963; Title 18, United States Code, Sections 922 and 924; Title 18, United States Code, Sections 1956 and 1957; and

Title 31, United States Code 5332 and that the foregoing will be found on the **Target Devices**, as further described in **Attachments A-1 & A-2.**

30. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments **A-1 & A-2**, and to seize the items listed in Attachments **B-1 & B-2**.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Ethan Cramer
Special Agent, HSI

Subscribed and sworn to before me this 22 day of March, 2019.

Honorable Nita L. Stormes
United States Magistrate Judge

14